Steven Gale Sharpton,                                    Case No. 16-cv-1938 (TNL)

              Plaintiff,

v.                                                                              **ORDER**

Nancy A. Berryhill,[1]
Acting Commissioner of Social Security,

              Defendant.

Gerald S. Weinrich, Weinrich Law Office, 400 South Broadway, Suite 203, Rochester, MN 55904 (for Plaintiff); and

Gregory G. Brooker, Acting United States Attorney, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415 (for Defendant).

# I. INTRODUCTION

Plaintiff Steven Gale Sharpton brings the present case, contesting Defendant Commissioner of Social Security's denial of his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* The parties have consented to a final judgment from the undersigned United States Magistrate Judge in accordance with 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and D. Minn. LR 72.1(c).

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. *The Acting Commissioner of Social Security*, Soc. Sec. Admin., https://www.ssa.gov/agency/commissioner.html (last visited Sept. 25, 2017). Commissioner Berryhill is automatically substituted for the previous Acting Commissioner of Social Security Carolyn W. Colvin. Fed. R. Civ. P. 25(d) (public officer's successor is automatically substituted as party when officer ceases to hold office while action is pending).

This matter is before the Court on the parties' cross-motions for summary judgment. (ECF Nos. 11, 13.) Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's motion for summary judgment (ECF No. 11) is **DENIED** and the Commissioner's motion for summary judgment (ECF No. 13) is **GRANTED**.

## II. PROCEDURAL HISTORY

Plaintiff applied for DIB in March 2013, asserting that he has been disabled since February 2012, due to, among other things, a back impairment. (Tr. 19, 60, 68, 69, 78.) Plaintiff's DIB application was denied initially and again upon reconsideration. (Tr. 19, 67, 68, 77, 78.) Plaintiff appealed the reconsideration of his DIB determination by requesting a hearing before an administrative law judge ("ALJ"). (Tr. 19, 94-97.)

The ALJ held a hearing in September 2014. (Tr. 19, 36, 38.) After receiving an unfavorable decision from the ALJ, Plaintiff requested review from the Appeals Council, which denied his request for review. (Tr. 1-3, 12-14, 16-35.) Plaintiff then filed the instant action, challenging the ALJ's decision. (Compl., ECF No. 1.) The parties have filed cross motions for summary judgment. (ECF Nos. 11, 13.) This matter is now fully briefed and ready for a determination on the papers.

## III. ANALYSIS

Disability benefits are available to individuals who are determined to be under a disability. 42 U.S.C. § 423(a)(1); 20 C.F.R. § 404.315. An individual is considered to be disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1505(a). This standard is met when a severe physical or mental impairment, or impairments, renders the individual unable to do his previous work or "any other kind of substantial gainful work which exists in the national economy" when taking into account his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A); *see* 20 C.F.R. § 404.1505(a). In general, the burden of proving the existence of disability lies with the claimant. 20 C.F.R. § 404.1512(a).

## A. ALJ'S Decision

Disability is determined according to a five-step, sequential evaluation process. 20 C.F.R. § 404.1520(a)(4).

> To determine disability, the ALJ follows the familiar five-step process, considering whether: (1) the claimant was employed; (2) []he was severely impaired; (3) h[is] impairment was, or was comparable to, a listed impairment; (4) []he could perform past relevant work; and if not, (5) whether []he could perform any other kind of work.

*Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010).

In relevant part, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date and his degenerative disk disease constituted a severe impairment. (Tr. 21.) The ALJ concluded that this impairment did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1, including Listing 1.04. (Tr. 23.) After finding that Plaintiff's subjective complaints were not fully credible and giving little weight to Jerry Davis, M.D., Plaintiff's treating physician, the ALJ

determined that Plaintiff had the residual functional capacity to perform light work with additional limitations.  (Tr. 24-29.)  The ALJ then found that Plaintiff was capable of performing his past relevant work as a security guard and ultimately concluded that Plaintiff was not disabled.  (Tr. 29-31.)

### B.  Issues for Review

Plaintiff challenges the ALJ's decision on three grounds.  Plaintiff asserts that the ALJ (1) erred in determining that his degenerative disk disease did not meet Listing 1.04; (2) improperly assessed his credibility; and (3) did not give appropriate weight to the opinion of his treating physician.

### C.  Standard of Review

This Court reviews whether the ALJ's decision is supported by substantial evidence in the record as a whole.  *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011).  "Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision."  *Id.*  This standard requires the Court to "consider both evidence that detracts from the [ALJ's] decision and evidence that supports it."  *Id.*  The ALJ's decision "will not [be] reverse[d] simply because some evidence supports a conclusion other than that reached by the ALJ."  *Id.*; *accord Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012).  "The court must affirm the [ALJ's] decision if it is supported by substantial evidence on the record as a whole."  *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (quotation omitted).  Thus, "[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court

must affirm the ALJ's decision." *Perks*, 687 F.3d at 1091 (quotation omitted); *accord Chaney*, 812 F.3d at 676.

### D. Listing 1.04

Consistent with the sequential nature of the disability evaluation process, the Court begins with Plaintiff's challenge to the ALJ's determination that his degenerative disk disease did not meet Listing 1.04. "[T]he listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990); *accord Lott v. Colvin*, 772 F.3d 546, 549 (8th Cir. 2014); *see* 20 C.F.R. § 404.1520(d) ("If you have an impairment(s) which meets the duration requirement and is listed in appendix 1 . . . , we will find you disabled without considering your age, education, and work experience."). When a severe impairment meets or equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, "the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

"To meet a listing, a claimant must show that he or she meets all of the criteria for the listed impairment." *Blackburn v. Colvin*, 461 F.3d 853, 858 (8th Cir. 2014) (citing *Zebley*, 493 U.S. at 531); *accord KKC ex. rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016) ("An impairment meets a listing only if it meets *all* of the specified medical criteria.") (quotation omitted). "Merely being diagnosed with a condition named in a listing and meeting some of the criteria will not qualify a claimant for presumptive disability under the listing." *McCoy v. Astrue*, 648 F.3d 605, 611-12 (8th Cir. 2011). Stated differently, "[a]n impairment that manifests only some of the list criteria, no

matter how severely, does not qualify." *Lott*, 772 F.3d at 549 (quotation omitted). The claimant bears the burden of establishing that he meets all the criteria of the relevant listing. *Blackburn*, 761 F.3d at 858.

Plaintiff asserts that his degenerative disk disease meets Listing 1.04A. Listing 1.04A requires that a spinal disorder such as degenerative disk disease be accompanied by

> [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04A. The requisite level of severity "is only met when all of the medical criteria listed . . . are simultaneously present." Social Security Acquiescence Ruling (AR) 15-1(4), *Radford v. Colvin: Standard for Meeting the Listing for Disorders of the Spine With Evidence of Nerve Root Compression*, 80 Fed. Reg. 57418-02, 57420 (Sept. 23, 2015) [hereinafter AR 15-1(4)]; *accord Atkins v. Colvin*, No. 15-1168-JWL, 2016 WL 2989393, at *12 (D. Kan. May 24, 2016); *see Banks v. Colvin*, No. 15-cv-01040-CJW, 2017 WL 382239, at *6 (N.D. Ia. Jan. 26, 2017), *appeal filed*, No. 17-1648 (8th Cir. Mar. 28, 2017). Thus, "when the listing criteria are scattered over time, wax and wane, or are present on one examination but absent on another, the individual's nerve root compression w[ill] not rise to the level of severity required by listing 1.04A." AR 15-1(4) at 57420.

Addressing three of Listing 1.04A's four criteria, Plaintiff asserts that he has experienced "pain and numbness radiating into his lower extremities"; limited "range of motion of the spine because of pain"; and "positive straight leg raise test[ing] on at least two occasions." (Pl.'s Mem. in Supp. at 20-21, ECF No. 12.) The Commissioner responds that Plaintiff has not met his burden to show that he satisfies *all* of Listing 1.04A's criteria because he has not shown that he exhibits the fourth: motor loss accompanied by sensory or reflex loss.

The record reflects that Plaintiff injured his back in February 2012 while shoveling wet sawdust at his place of employment. (*See, e.g.*, Tr. 42, 263, 283.) A subsequent MRI showed a disk bulge at T11-12, "causing mass effect to [the] L5 nerve root." (Tr. 271; *see* Tr. 320-21; *see also* Tr. 347 ("[T]he MRI from 3/23/2012 shows L4-5 disk disease with small eccentric disk herniation to the right, which is not impinging on a nerve root."), 368 (same).) Thereafter, Plaintiff continued to seek treatment for low-back pain. (*See, e.g.*, Tr. 266, 269, 270, 279, 283, 285, 310, 340, 347, 356, 362, 368, 374, 376, 423, 431, 433, 436, 458.) Plaintiff's treatment providers generally observed some tenderness and restriction in his range of motion and noted that he frequently changed positions while sitting. (*See, e.g.*, Tr. 264, 265, 269, 271, 273-74, 357, 375, 376, 436.) During these examinations, however, Plaintiff was noted to have full muscle strength. (Tr. 264, 274, 280 (February, April and May 2012); Tr. 346, 349, 367, 370 (August 2013); Tr. 387, 419, 426 (January and April 2014); *see* Tr. 25-27.)

Motor loss is defined in Listing 1.04A as "atrophy with associated muscle weakness or muscle weakness." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04A.

Plaintiff has not pointed to evidence in the record showing that he experienced motor loss as a result of his degenerative disk disease and the ALJ properly observed that Plaintiff's examinations showed that he had full muscle strength. Therefore, even assuming Plaintiff met the other three criteria, Plaintiff has not met his burden to show that all of Listing 1.04A's medical criteria are present. *See Blackburn*, 761 F.3d at 858. The presence of some but not all of the medical criteria is insufficient for Plaintiff's degenerative disk disease to meet Listing 1.04A. *See Banks*, 2017 WL 382239, at *6 ("Therefore, whether claimant consistently or episodically exhibited positive straight-leg raises, the medical evidence fails to demonstrate she had the other conditions necessary to meet or equal Listing 1.04(A)."); *see also Lott*, 772 F.3d at 549; *McCoy*, 648 F.3d at 611-12. Based on the foregoing, the ALJ did not err in concluding that Plaintiff's degenerative disk disease did not meet Listing 1.04.

### E. Plaintiff's Credibility

Next, Plaintiff challenges the ALJ's assessment of his credibility. Plaintiff argues that the intensity, persistence, and limiting effects of his symptoms are supported by the objective medical evidence, examinations and observations of his treatment providers, and his testimony regarding his activities. The Commissioner responds that the ALJ gave good reasons for discounting Plaintiff's subjective complaints.

#### 1. Credibility Assessments

When determining a claimant's residual functional capacity, an ALJ takes into account the claimant's subjective complaints, evaluating the credibility of such complaints. *See Perks*, 687 F.3d at 1092. In the Eighth Circuit, the *Polaski* factors are

used to evaluate a claimant's subjective complaints. *Halverson*, 600 F.3d at 931 (citing

*Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984)); *Hightower v. Colvin*, No. 15-cv-202

(SER), 2015 WL 12683980, at *14 (D. Minn. Nov. 3, 2015). When

> assessing a claimant's credibility, the ALJ must consider: (1)
> the claimant's daily activities; (2) the duration, intensity, and
> frequency of pain; (3) the precipitating and aggravating
> factors; (4) the dosage, effectiveness, and side effects of
> medication; (5) any functional restrictions; (6) the claimant's
> work history; and (7) the absence of objective medical
> evidence to support the claimant's complaints.

*Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009); *see Halverson*, 600 F.3d at 931.

"The ALJ is not required to discuss each *Polaski* factor as long as 'he acknowledges and

considers the factors before discounting a claimant's subjective complaints.'" *Halverson*,

600 F.3d at 932 (quoting *Moore*, 572 F.3d at 524). Courts "will defer to an ALJ's

credibility finding so long as the ALJ explicitly discredits a claimant's testimony and

gives good reasons for doing so." *Hensley v. Colvin*, 829 F.3d 926, 934 (8th Cir. 2016)

(quotation omitted).

### 2. ALJ's Findings

Acknowledging the appropriate factors to be considered, the ALJ found that

Plaintiff's subjective complaints were not fully credible for several reasons. The ALJ

observed that, despite Plaintiff's allegations of disabling pain, he was not using "physical

therapy, biofeedback, iontophoresis, a morphine pump, acupuncture, massage therapy,

braces or splints, special creams or ointments, herbal remedies, chiropractic adjustments,

or anything similar for pain relief." (Tr. 28.) The ALJ also observed that there were no

"observable manifestations" of severe chronic pain "such as muscular atrophy due to

muscle guarding; muscular spasms; prolonged bed rest; or adverse neurological signs." (Tr. 28.) As a result, the ALJ determined that "[t]he record fail[ed] to demonstrate the presence of any pathological clinical signs, significant medical findings, or significant neurological abnormalities that would establish the existence of a pattern of pain of such severity as to prevent the claimant from engaging in any work on a sustained basis." (Tr. 28.) The ALJ similarly noted that Plaintiff's decision not to undergo surgery for his back "because he 'chickened out'" demonstrated that Plaintiff "had not taken all steps to improve his impairments and . . . further reduced the credibility of his allegations." (Tr. 27.)

Turning to Plaintiff's daily activities, the ALJ concluded that Plaintiff "remained quite active in his daily life in spite of his alleged pain." (Tr. 28.) The ALJ noted that Plaintiff

> admitted that he had only minimal problems getting on socks and shoes, and indicated no other issues with respect to performing personal care tasks. He also admitted that he was able to care for his dogs and cats. He stated that he could make his own simple meals, like sandwiches. He also admitted that he could put away dishes. He stated that he was able to drive to the store and did his own shopping in stores and by computer. He stated that he enjoyed watching television and regularly spoke to his family on the phone. He also indicated that he had no problems paying attention.

(Tr. 28 (citations omitted).) The ALJ "found that there was simply no objective evidence during the relevant period that could reasonably produce all of the symptoms the claimant complains of and yet, at the same time, allow him to cook, shop, clean, watch television, drive, and perform his own personal care tasks." (Tr. 28.) In a similar vein, the ALJ

concluded that testimony by Plaintiff at the hearing that he needed to rest every 25 to 30 minutes to relieve pain was inconsistent with a treatment note "indicat[ing] that [Plaintiff] took a 12 hour driving trip to Oklahoma in December 2013," suggesting that Plaintiff "exaggerate[d] his symptoms at the hearing and that he was not as limited by his degenerative dis[k] disease . . . as his allegations implied when looking at the objective medical evidence." (Tr. 27.)

### 3. Substantial Evidence Supports the ALJ's Credibility Determination

The ALJ's credibility findings can be grouped into three categories: the objective medical evidence, Plaintiff's activities, and treatment measures. The Court considers each in turn.

### a. Objective Medical Evidence

Plaintiff argues that his degenerative disk disease is supported by imaging studies, physical examinations, and the observations of his treatment providers, including notes regarding difficulties standing and sitting, frequent position changes, and pain-avoidance behaviors. Plaintiff additionally argues that, despite citing a lack of objective evidence to support his symptoms, "[t]he ALJ could not point to any specific part of the medical record contradicting [his] testimony as to his symptoms and limitations," and there is no indication that any of his treatment providers "believed that he is exaggerating or embellishing his symptoms or resulting limitations." (Pl.'s Mem. in Supp. at 18.)

The Commissioner responds that the ALJ properly concluded that the objective medical evidence did not support the extent of the symptoms alleged. The Commissioner states that "the ALJ expressly reviewed the objective medical evidence documenting that

Plaintiff consistently had full muscle strength, intact sensation and reflexes, and normal or only mildly antalgic gait." (Comm'r's Mem. in Supp. at 7.) The Commissioner also states that the ALJ "found it significant that the record did not document[] observable manifestations of severe chronic pain, such as muscular atrophy, muscle spasms, and adverse neurologic signs." (Comm'r's Mem. in Supp. at 7.)

"A symptom is . . . [a claimant's] own description of his or her physical or mental impairments." *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, SSR 96-7p, 1996 WL 374186, at *2 (Soc. Sec. July 2, 1996) [hereinafter SSR 96-7p] [2]; *accord* 20 C.F.R. § 404.1528(a). Although "[s]ymptoms cannot be measured objectively through clinical or laboratory diagnostic techniques[,] . . . their effects can often be clinically observed." SSR 96-7p, 1996 WL 374186, at *6. Accordingly, objective medical evidence is a useful indicator to assist in determining the intensity and persistence of an individual's symptoms and the effects such symptoms may have on the ability to function. *Id.*; *accord* 20 C.F.R. § 404.1529(c)(2). "The examples in the regulations (reduced joint motion, muscle spasm, sensory deficit, and motor disruption) illustrate findings that may result from, or be associated with, the symptom of pain." SSR 96-7p, 1996 WL 374186, at *6; *see* 20 C.F.R. § 404.1529(c)(2). "When present, these findings tend to lend credibility to an individual's allegations about pain or other symptoms and their functional effects." SSR 96-7p, 1996 WL 374186, at *6.

---

[2] SSR 96-7p was superseded by *Social Security Ruling 16-3p; Titles II and XVI: Evaluations of Symptoms in Disability Claims*, which went into effect on March 16, 2016. 2016 WL 1119029, at *1 (Soc. Sec. Mar. 16, 2016) [hereinafter 16-3p]. The ALJ's decision on Plaintiff's application was rendered over one year before SSR 16-3p went into effect and neither party argues for its application in the instant case.

After reviewing the medical evidence, the ALJ found that there were no "pathological clinical signs, significant medical findings, or significant neurological abnormalities that would establish the existence of a pattern of pain of such severity as to prevent the claimant from engaging in any work on a sustained basis." (Tr. 28.) It is true that Plaintiff's treatment providers observed tenderness, some restriction in range of motion, frequent adjusting of positions, and behaviors designed to avoid increased pain, such as walking with "obvious effort to control movements in an attempt to manage his pain." (Tr. 376.) The ALJ noted these observations, but also noted places in the record where Plaintiff's treatment providers documented full strength, normal range of motion, a mild or non-antalgic gait, and intact sensation and reflexes. (Tr. 25-27.) The Court concludes that there is substantial evidence to support the ALJ's conclusion that the objective medical evidence did not support Plaintiff's complaints of disabling pain and the ALJ did not err in considering the absence of such evidence as one factor in evaluating Plaintiff's credibility. *See* 20 C.F.R. § 404.1529(c)(2) ("However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."); *Halverson*, 600 F.3d at 931-32 ("Another factor to be considered is the absence of objective medical evidence to support the complaints, although the ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence.").

### b. Plaintiff's Activities

Plaintiff also takes issue with the ALJ's evaluation of his daily activities, arguing that the ALJ concluded that he "remained very active[]despite his testimony that he does very little around the home[,] leaving the cleaning and maintenance to his wife." (Pl.'s Mem. in Supp. at 18.) The Commissioner responds that substantial evidence supports the ALJ's conclusion that Plaintiff's activities evidenced greater ability to function than Plaintiff alleged.

"One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." SSR 96-7p, 1996 WL 374186, at *5. "The adjudicator must compare statements made by the individual in connection with his or her claim for disability benefits with statements he or she made under other circumstances, when such information is in the case record." *Id.* Further, "acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." *Halverson*, 600 F.3d at 932 (quotation omitted). "[A]cts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain." *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009); *accord Wright v. Colvin*, 789 F.3d 847, 854 (8th Cir. 2015) (identifying driving, shopping, bathing, and cooking as daily activities previously found inconsistent with disabling pain). An "ALJ may disbelieve [a claimant's] subjective complaints if there are inconsistencies in the evidence as a whole." *Chaney*, 812 F.3d at 677 (quotation omitted).

In his disability reports and at the hearing, Plaintiff stated that he suffers from constant lower back pain and, at times, his back goes out or freezes, rendering him unable to move at all.  (Tr. 43, 202, 217.)  Plaintiff reported that he is unable to sit, stand, or walk for more than 15 to 20 minutes due to pain.  (Tr. 202; *see* Tr. 45-46.)  Plaintiff further stated that he is unable to bend or twist without severe pain and frequently adjusts/shifts positions during the day in response to pain.  (Tr. 45-47, 49, 202, 203, 209, 217.)

Plaintiff is able to manage all of his own personal care, but occasionally needs help with his shoes and socks.  (Tr. 48, 203, 218.)  Plaintiff performs a few chores around the house, but most of them are done by his wife.  (Tr. 48; *see* Tr. 204, 219.)  Plaintiff reported taking out the trash, doing "a few dishes," doing a load of laundry, and feeding the family pets.  (Tr. 203, 218, 219, 221.)  Plaintiff also prepares simple meals for himself, such as sandwiches.  (Tr. 204, 219.)  Plaintiff takes short walks, approximately two blocks total, with his wife and the dog.  (Tr. 49; *see* Tr. 49, 50, 202, 207.)  Plaintiff reported that he used to run, hunt, fish, go out with friends, play cards, and bowl, but can no longer do so because of pain, and now spends time watching television.  (Tr. 49, 206, 218, 221.)

Plaintiff is able to drive, but most of the time his wife drives.  (Tr. 40, 46, 205, 220.)  Plaintiff does, however, drive a short distance to a local grocery store a few blocks away to pick up a couple of items on a daily basis.  (Tr. 205, 206.)  At the hearing, the ALJ asked Plaintiff about driving to Oklahoma in December 2013 given his difficulty with sitting for long periods of time.  (Tr. 46.)  Plaintiff testified that "[i]t wasn't easy"

and he was usually able to drive around 25 to 30 minutes before needing to pull over. (Tr. 46.) Plaintiff also testified that, when his wife drives, he is able to "maneuver around a little longer." (Tr. 46.) Plaintiff further testified that his wife drove most of the approximately two hours it took them to get to the hearing and they had to stop four times along the way. (Tr. 47.)

Finding that Plaintiff "appear[ed] to have remained quite active in his daily life in spite of his alleged pain," the ALJ pointed to, among other things, Plaintiff's ability to manage his own personal care with "minimal problems getting on socks and shoes"; care for family pets; make simple meals; put dishes away; and drive to the store and shop. (Tr. 28.) The ALJ also found that Plaintiff's trip to Oklahoma was not consistent with his testimony that he needed to stop every 25 to 30 minutes due to pain and suggested Plaintiff was not as limited as he alleged. (Tr. 27.) While Plaintiff's activities may arguably not seem to be extensive, there is substantial evidence in the record to support the ALJ's conclusion that the activities Plaintiff does engage in are inconsistent with his complaints of disabling pain. *See Wright*, 789 F.3d at 854; *Medhaug*, 578 F.3d at 817.

### c. Treatment Measures

Lastly, "[t]he ALJ may properly consider . . . the claimant's willingness to submit to treatment . . . in order to determine the sincerity of the claimant's allegations of pain." *Gray v. Apfel*, 192 F.3d 799, 804 (8th Cir. 1999); *see Turpin v. Colvin*, 750 F.3d 989, 993 (8th Cir. 2014) (impairments controllable by treatment or medication not disabling). Plaintiff argues that "[t]he ALJ cited lack of steps to improve symptoms, but could not point to any treatment modality recommended to [him] that he had refused." (Pl.'s Mem.

in Supp. at 18.) The Commissioner responds that the ALJ's properly took into account Plaintiff's willingness to undergo treatment by "not[ing] Plaintiff's admission that he 'chickened out' and did not undergo his scheduled back surgery, indicating he was not willing to take whatever steps were necessary to alleviate his alleged pain." (Comm'r's Mem. in Supp. at 7.)

When assessing a claimant's credibility, the ALJ is required to consider medication and other treatment the claimant has received. 20 C.F.R. § 404.1529(c)(3)(iv) (medication), (v) (treatment other than medication); SSR 96-7p, 1996 WL 374186, at *3.

> Persistent attempts by the individual to obtain relief of pain or other symptoms, such as by increasing medications, trials of a variety of treatment modalities in an attempt to find one that works or that does not have side effects, referrals to specialists, or changing treatment sources may be a strong indication that the symptoms are a source of distress to the individual and generally lend support to an individual's allegations of intense and persistent symptoms.

SSR 96-7p, 1996 WL 374186, at *7 (footnote omitted).

The ALJ's evaluation of Plaintiff's medication and treatment gives the Court pause. The ALJ noted that, "[i]n spite of allegations of disabling pain, the claimant reports no current use of physical therapy, biofeedback, iontophoresis, a morphine pump, acupuncture, massage therapy, braces or splints, special creams or ointments, herbal remedies, chiropractic adjustments, or anything similar for pain relief." (Tr. 28.) Yet, medical evidence in the record shows that Plaintiff attended physical therapy for approximately three months without relief. (*See, e.g.*, Tr. 264, 265, 267, 269, 271, 279;

*see also* Tr. 43.) Plaintiff was also prescribed a TENS unit[3] for pain relief, which he used during the relevant period. (Tr. 275; *see* Tr. 43, 202, 203, 217, 223, 436.) Neither of these treatment modalities was recognized by the ALJ.

Further, while noting that Plaintiff was prescribed Tramadol[4] and Lortab[5] in the discussion of the medical record, the ALJ does not appear to have taken into account Plaintiff's chronic use of these narcotic pain relievers approximately twice per day to manage his pain when assessing his credibility. (*Compare* Tr. 25, 26 *with* Tr. 28; *see, e.g.*, Tr. 44, 264, 275, 279, 287, 306-07, 315, 340, 350-51, 362, 374, 387, 419, 435.) *See* 20 C.F.R. § 404.1529(c)(3)(iv) (considering "[t]he type, dosage, effectiveness, and any side effects of any medication you take or have taken to alleviate your pain or other symptoms"). Nor did the ALJ discuss the fact that Plaintiff tried four different muscle relaxers—Flexeril[6] (Tr. 264, 279), Robaxin[7] (Tr. 265), baclofen[8] (Tr. 270), and

---

[3] "A transcutaneous electrical nerve stimulator (TENS) is a device that uses electrical current delivered through electrodes placed on the skin to decrease a recipient's perception of pain by inhibiting the transmission of pain nerve impulses toward the brain and[] stimulating the release of endorphins." *Transcutaneous Electrical Nerve Stimulator (TENS)*, Minn. Dep't Human Servs., http://www.dhs.mn.gov/main/idcplg?IdcService=GET_DYNAMIC_ CONVERSION&dDocName=dhs16_143044&RevisionSelectionMethod=LatestReleased (last visited Aug. 28, 2017).

[4] Tramadol is a narcotic pain reliever used to "[t]reat[] moderate to severe pain." *Tramadol (By mouth)*, PubMed Health, U.S. Nat'l Library of Medicine, https://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0012486/ (last visited on Aug. 28, 2017).

[5] Lortab is a brand name for a hydrocodone-acetaminophen combination. *Hydrocodone/Acetaminophen (By mouth)*, PubMed Health, U.S. Nat'l Library of Medicine, https://www ncbi nlm nih.gov/pubmedhealth/ PMHT0010590/?report=details (last visited on Aug. 28, 2017). Hydrocodone is a narcotic pain reliever. *Id.*

[6] Flexeril is a brand name for cyclobenzaprine, a muscle relaxer used to "[t]reat pain and stiffness caused by muscle spasms." *Cyclobenzaprine (By mouth) (Flexeril)*, PubMed Health, U.S. Nat'l Library of Medicine, https://www. ncbi.nlm.nih.gov/pubmedhealth/PMHT0009767/ (last visited on Aug. 28, 2017).

[7] Robaxin is a brand name for methocarbamol, a muscle relaxer "used to relieve the discomfort caused by acute (short-term), painful muscle or bone conditions." *Methocarbamol (Robaxin)*, PubMed Health, U.S. Nat'l Library of Medicine, https://www.ncbi nlm nih.gov/pubmedhealth/PMHT0001156/ (last visited on Aug. 28, 2017).

[8] Baclofen is a muscle relaxer. *Baclofen*, PubMed Health, U.S. Nat'l Library of Medicine, https://www.ncbi nlm. nih.gov/pubmedhealth/PMHT0000200/ (last visited on Aug. 28, 2017).

tizanidine[9] (Tr. 438)—and at least two other pain medications—gabapentin[10] (Tr. 44-45, 357, 376) and Lyrica[11] (Tr. 438). It is not clear to this Court how and to what extent, if any, the ALJ considered Plaintiff's use of medication in evaluating his subjective complaints of pain. *See* 20 C.F.R. § 404.1529(c)(3)(iv); SSR 96-7p, 1996 WL 374186, at *3.

Similarly, the ALJ's reliance on Plaintiff's cancellation of his December 2013 back surgery as demonstrating that "he had not taken all steps to improve his impairments" is less persuasive when placed in the appropriate context. True, Plaintiff did testify at the hearing that he "chickened out" of the surgery. (Tr. 51.) And, at the time of cancellation, it was noted that Plaintiff "is very nervous and wished to cancel at this time." (Tr. 380.) At this time, however, it was also noted that "family problems came up" and Plaintiff needed to travel to Oklahoma because "[h]is brother and sister are both terminal" and "[h]e is planning to see them for the last time." (Tr. 377; *see* Tr. 51, 392, 423.) Plaintiff explained at the hearing:

> Then when it came time for surgery I ended up having to make a trip to Oklahoma because my brother had just had a heart attack. He went in for surgery, for like a multi bypass surgery and ended up having another heart attack on, in the surgery. I don't know. It just kind of got to me.

---

[9] Tizanidine is a muscle relaxer used to "[t]reat muscle spasticity." *Tizanidine (By mouth)*, PubMed Health, U.S. Nat'l Library of Medicine, https://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0012442/ (last visited on Aug. 28, 2017).

[10] Gabapentin is used to treat postherpetic neuralgia and "relieves pain . . . by changing the way the body senses pain." *Gabapentin*, MedlinePlus, U.S. Nat'l Library of Medicine, https://medlineplus.gov/druginfo/meds/a694007 html (last visited on Aug. 28, 2017).

[11] Lyrica is a brand name for pregabalin, a medication used to "[t]reat nerve and muscle pain . . . ." *Pregabalin (By mouth) (Lyrica)*, PubMed Health, U.S. Nat'l Library of Medicine, https://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0011830/ (last visited on Aug. 28, 2017).

(Tr. 51.)

Plaintiff further testified that, when he returned, Dr. Davis informed him that he should not have the surgery and "it probably wouldn't do any good." (Tr. 51-52.) Indeed, when Plaintiff saw Dr. Davis in May 2014, Dr. Davis noted:

> I think this [cancellation] was fortuitous because he is now presenting again with pain in multiple locations in his lower back. He has pain at the thoracolumbar junction and he also continues to have pain in the lumbosacral junction. He is applying for disability because of the severity of his pain. He is also seeing a counselor because of depression. All of this in total I think tells me that surgery would not be indicated for him. We certainly cannot address back pain in multiple locations. The severity of his pain also would be a relative contraindication to the success of our surgery. I, therefore, told him today that his cancellation of his surgery has helped us to make a better clinical decision and that he is not a candidate for a spinal fusion at the L4-5 level as this certainly will not address the multiple areas of back pain that he is now exhibiting.

(Tr. 423-24.) The ALJ summarized Dr. Davis's conclusion as "stating at this time that [Plaintiff] was not a candidate for spinal fusion." (Tr. 27.) Despite noting that surgery was no longer recommended, the ALJ still relied on the cancellation to discount Plaintiff's credibility.

Considering the foregoing, the question of whether substantial evidence supports the ALJ's analysis of Plaintiff's willingness to submit to treatment as a factor in assessing his credibility is a closer call in this case. But, even when an ALJ draws erroneous references from the record in assessing a claimant's credibility, "reversal is warranted only where the remainder of the record does not support . . . [the] ALJ's credibility determination." *Chaney*, 812 F.3d at 677.

The Court does not doubt that Plaintiff experiences pain. But, in the end, the question is not whether Plaintiff does or does not experience pain. *See Perkins v. Astrue*, 648 F.3d 892, 900 (8th Cir. 2011) ("While pain may be disabling if it precludes a claimant from engaging in any form of substantial gainful activity, the mere fact that working may cause pain or discomfort does not mandate a finding of disability.") (quotation omitted). Nor is the question "whether substantial evidence exists to reverse the ALJ." *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010); *see Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) ("We may not reverse simply because we would have reached a different conclusion than the ALJ or because substantial evidence supports a contrary conclusion."). The question is "whether substantial evidence supports the ALJ's decision." *Vossen*, 612 F.3d at 1015; *see Chaney*, 812 F.3d at 676; *Perks*, 687 F.3d at 1091.

"[T]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Moore*, 572 F.3d at 524 (quotation omitted); *see Hensley*, 829 F.3d at 934. Notwithstanding any error in the ALJ's analysis of Plaintiff's willingness to submit to treatment, the ALJ properly considered Plaintiff's daily activities alongside the lack of objective evidence supporting his complaints of disabling pain when assessing his credibility. *See Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (extent of claimant's regular physical activities when considered in conjunction with the medical record undermined claimant's credibility). These good reasons for finding a claimant's subjective complaints not fully credible are supported by substantial evidence. While this Court may have conducted the credibility analysis differently, the ALJ sufficiently

considered Plaintiff's subjective complaints of disabling pain in light of the evidence as a whole and the ALJ's overall credibility determination is supported by substantial evidence. *See Chaney*, 812 F.3d at 677; *Vossen*, 612 F.3d at 1015.

### F. Dr. Davis

Lastly, Plaintiff challenges the ALJ's assignment of little weight to the opinion of Dr. Davis, his treating physician.

### 1. Dr. Davis's Opinion

Dr. Davis is a neurosurgeon who evaluated Plaintiff in connection with his degenerative disk disease. (Tr. 283, 285, 376, 423, 458, 445, 446.) While Dr. Davis at one point recommended that Plaintiff undergo back surgery, Dr. Davis subsequently determined that Plaintiff was not a candidate for surgery. (Tr. 285, 423-24, 458.) In his treatment notes, Dr. Davis wrote: "Since [Plaintiff] says he cannot work and I have no surgical procedures that can relieve him of his pain, I would therefore support disability based on this." (Tr. 424; *accord* Tr. 458.)

Dr. Davis completed a medical source statement in September 2014. (Tr. 445-56.) In relevant part, Dr. Davis opined that Plaintiff was limited in his lumbar range of motion, but did not specify to what extent, noting that loss of range of motion was not quantified. (Tr. 447.) Dr. Davis opined that Plaintiff had no sensory abnormalities, weakness or muscle atrophy, or arachnoiditis. (Tr. 447-48.) Dr. Davis checked

"unknown" with respect to any reflex abnormalities. (Tr. 448.) Dr. Davis also indicated that Plaintiff did not have pseudoclaudication.[12]

With respect to Plaintiff's functional abilities, Dr. Davis opined that Plaintiff was limited by back pain and had difficulty sitting, sleeping, and riding in cars without changing positions "frequently." (Tr. 453.) Dr. Davis opined that Plaintiff needed to change positions every 30 minutes to relieve pain. (Tr. 449.) Dr. Davis checked "unknown" regarding Plaintiff's ambulatory abilities. (Tr. 451.) Dr. Davis also did not answer more specific questions regarding Plaintiff's abilities to stand and/or walk, lift and/or carry, and bend/stoop, noting that Plaintiff "did not have functional testing that . . . [Dr. Davis was] aware of." (Tr. 453.)

## 2. ALJ's Findings

The ALJ gave "little weight" to Dr. Davis's opinion. (Tr. 28.) In making this determination, the ALJ pointed to Dr. Davis's "own admission" that functional testing was not performed. (Tr. 28.) The ALJ also found that Dr. Davis's assessment "appeared to [be] bas[ed] on . . . [Plaintiff's] subjective complaints." (Tr. 28.) The ALJ also cited a lack of "objective evidence in the record to support . . . [the] limitations" identified by Dr. Davis. (Tr. 28.)

---

[12] "Pseudoclaudication can be a symptom of lumbar spinal stenosis, a condition that occurs when the spinal canal narrows in your lower back." *Pseudoclaudication: Is it related to claudication?*, Mayo Clinic, http://www.mayoclinic.org/diseases-conditions/spinal-stenosis/expert-answers/pseudoclaudication/faq-20057779?p=1 (last accessed Aug.29, 2017).

> The nerve roots that control movement and sensation in your legs pass through these narrow areas in your spinal canal. If these areas become too narrow, they can put pressure on the nerve roots. Pseudoclaudication pain is made worse by standing or walking, and is usually relieved by sitting or lying down.

*Id.*; *see Spinal Stenosis*, PubMed Health, U.S. Nat'l Library of Medicine, https://medlineplus.gov/spinalstenosis.html (last visited on Aug. 29, 2017) (linking to Mayo Clinic article).

### 3. Weighing Opinions from Treating Sources

Opinions from acceptable medical sources are statements from physicians about the nature and severity of a claimant's impairments, including any symptoms, diagnosis, and prognosis; what the claimant is still able to do despite the impairments; and any physical or mental restrictions. 20 C.F.R. § 404.1527(a)(2). These opinions are weighed according to a number of factors, including the examining relationship, treatment relationship, opinion's supportability, opinion's consistency with the record as a whole, specialization of the provider, and any other factors tending to support or contradict the opinion. 20 C.F.R. § 404.1527(c).

There is no dispute that Dr. Davis is an acceptable medical source who treated Plaintiff. *See* 20 C.F.R. §§ 404.1502 (identifying claimant's own physician as treating source), .1513(a)(1) (identifying licensed physicians as acceptable medical sources). A treating source's "opinion is entitled to controlling weight when it is supported by medically acceptable techniques and is not inconsistent with substantial evidence in the record." *Julin v. Colvin*, 826 F.3d 1082, 1088 (8th Cir. 2016); *accord Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014).

"Yet[, this controlling] weight is neither inherent nor automatic and does not obviate the need to evaluate the record as a whole." *Cline*, 771 F.3d at 1103 (citation and quotation omitted); *see Bernard v. Colvin*, 774 F.3d 482, 487 (8th Cir. 2014) ("Since the ALJ must evaluate the record as a whole, the opinions of treating physicians do not automatically control."). A treating source's opinion may be discounted or disregarded "where other medical assessments are supported by better or more thorough medical

evidence, or where a treating [source] renders inconsistent opinions that undermine the credibility of such opinions." *Cline*, 771 F.3d at 1103 (quotation omitted). When a treating source's opinion is not given controlling weight, the opinion is weighed based on the several factors identified above. 20 C.F.R. § 404.1527(c)(2); *Shontos v. Barnhart*, 328 F.3d 418, 426 (8th Cir. 2003). The ALJ is required to "give good reasons" for the weight assigned to a treating source's opinion. 20 C.F.R. § 404.1527(c)(2); *Cline*, 771 F.3d at 1103.

### 4. Substantial Evidence Supports the Weight Given to Dr. Davis's Opinion

Plaintiff argues that, even though functional testing was not performed, "Dr. Davis felt confident that due to [Plaintiff's] impairment of the spine [he] will need to alternate body positions at least every 30 minutes." (Pl.'s Mem. in Supp. at 19.) Plaintiff argues that "the medical history shows on numerous occasions [his] treating physicians observed limitations of motion of the spine, positive straight leg rise, and symptoms that would make it very difficult for [him] to perform light work." (Pl.'s Mem. in Supp. at 19; *see* Pl.'s Reply at 3-4, ECF No. 15.) Plaintiff also argues that "it is hard to imagine a circumstance where a physician's assessment and conclusions regarding their patient's condition does not take into account the patient's report of their symptoms." (Pl.'s Reply at 3.) The Commissioner responds that the ALJ properly discounted Dr. Davis's opinion based on the lack of objective evidence supporting the opinion and Dr. Davis's reliance on Plaintiff's subjective complaints.

Dr. Davis's medical source statement was the only direct evidence of a functional limitation regarding Plaintiff's need to alternate positions every 30 minutes. Plaintiff points to medical evidence in the record related to the diagnosis of degenerative disk disease in support of Dr. Davis's opinion. (See Pl.'s Mem. in Supp. at 19; Pl.'s Reply at 3.) But, the fact that Plaintiff suffers from degenerative disk disease is not in dispute, nor does the presence of a medically documented impairment "perforce result in a finding of disability." *Stormo v. Barnhart*, 377 F.3d 801, 807 (8th Cir. 2004).

Dr. Davis himself stated that no functional testing was performed. And, aside from imaging supporting the diagnosis of degenerative disk disease and limitation in Plaintiff's lumbar range of motion that Dr. Davis was unable to quantify, no other medical evidence was cited by Dr. Davis in support of Plaintiff's need to alternate positions every 30 minutes. *See* 20 C.F.R. § 1527(c)(3); *Teague v. Astrue*, 638 F.3d 611, 616 (8th Cir. 2011). Therefore, the ALJ reasonably concluded that Dr. Davis's opinion was based on Plaintiff's subjective statements. Such reliance is further evidenced by Dr. Davis's own treatment note stating that he would support disability because Plaintiff "says he cannot work and I have no surgical procedures that can relieve him of his pain." (Tr. 424; *accord* Tr. 458.) As discussed above, the ALJ's determination that Plaintiff was not fully credible is supported by substantial evidence. "Because the ALJ declined to credit [Plaintiff], the ALJ was entitled to discount Dr. [Davis's] opinion[] insofar as [it] relied on [Plaintiff's] subjective complaints." *Julin*, 826 F.3d at 1089; *see Renstrom v. Astrue*, 680 F.3d 1057, 1064 (8th Cir. 2012); *Teague*, 638 F.3 at 615-16.

At the same time, the ALJ did not entirely disregard evidence in the record concerning Plaintiff's ability to maintain a particular position. In addition to Dr. Davis's medical source statement and Plaintiff's subjective statements, other evidence in the record bearing on this aspect of Plaintiff's residual functional capacity included observations from treatment providers that he shifted positions often. When determining Plaintiff's residual functional capacity, the ALJ limited Plaintiff to light work that would allow him the option to change positions from sitting to standing and *vice versa* every hour. (Tr. 24.) Thus, while the ALJ did not give controlling weight to Dr. Davis's opinion and did not fully credit Plaintiff's own description of his limitations, the ALJ included a limitation addressing Plaintiff's ability to maintain a particular position to the extent supported by the record. *See Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir,. 2013) (residual-functional-capacity determination must be "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his] limitations") (quotation omitted).

In sum, the Court concludes that the ALJ properly considered the entire record in determining the weight to be given to Dr. Davis's opinion and gave good reasons for not allocating controlling weight to this opinion. The weight assigned to Dr. Davis's opinion is supported by substantial evidence in the record.

## IV. ORDER

Based upon the record, memoranda, and the proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgement (ECF No. 11) is **DENIED**.

2. Defendant's Motion for Summary Judgment (ECF No. 13) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September___25___, 2017

_____s/ Tony N. Leung_____
Tony N. Leung
United States Magistrate Judge
for the District of Minnesota

*Sharpton v. Berryhill*
Case No. 16-cv-1938 (TNL)